**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **REGINO E. RAZOTE,** | |
| Plaintiff, | Case No. 09 C 4943 |
| v. | |
| **JOHN E. POTTER, Postmaster General,** | Hon. Harry D. Leinenweber |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Postmaster General John E. Potter's (hereinafter, the "Postal Service") Motion for Summary Judgment on Plaintiff Regino Razote's (hereinafter, "Razote") disability discrimination, race and gender discrimination, and retaliation claims. For the reasons stated herein, the motion is granted.

### I. BACKGROUND

The following facts are taken from the parties' Local Rule 56.1 statements, deposition testimony, and exhibits. Razote is a Filipino man who has worked as a letter carrier for the Niles branch of the U.S. Postal Service since 1994. He continues to work for the Postal Service as a letter carrier in a "limited-duty" position. Razote brought the instant four-count complaint against the Postmaster General alleging disability discrimination in

violation of the Rehabilitation Act (Count I), gender and race discrimination in violation of Title VII of the Civil Rights Act (Counts II and III), and retaliation in violation of Title VII (Count IV). Razote's disability discrimination claim is based on his assertion that the Postal Service failed to provide him with a reasonable accommodation, forced him to work outside his medical restrictions, and forced him to take a medical leave of absence. Razote's gender and race discrimination claims are based on his allegation that similarly situated disabled female employees and those of other races were given light-duty positions while he was denied one. Razote's retaliation claim alleges that his supervisors denied him a light-duty position and forced him to work outside his job restrictions in retaliation for his having made Equal Employment Opportunity ("EEO") complaints.

In March 2005, Razote injured his back while lifting a tub of mail and suffered a sciatic nerve injury. Razote remained off of work until September 2005. When he returned to work, his physician placed certain limitations on Razote, including that he could lift no more than five pounds, stand no more than one hour at a time, and walk no more than twenty minutes at a time. Razote also was limited in his ability to climb, bend, stoop, and twist. His condition has not improved since that time, and those limitations remain in place.

Razote's physical limitations are inconsistent with his position as a letter carrier because that work requires continuous lifting of ten to thirty-five pounds and intermittent standing, walking, bending and twisting, for six to eight hours a day. Because Razote could no longer perform the regular duties of a letter carrier, the Department of Labor's Office of Worker's Compensation Programs (the "OWCP") directed the Postal Service to provide Razote with a permanent job that met his restrictions if it was possible to do so.

Subsequently, Razote was given a "limited-duty" assignment. The Postal Service assigns workers to such positions when an employee is injured on the job. Such assignments allow employees to continue working in a full-time job that is close to their prior employment, while accommodating physical restrictions. Before accepting a limited-duty assignment, an employee can review and comment on the terms of the assignment to confirm that the required tasks are within the employee's job limitations. After discussing the terms of the assignment with a supervisor, the employee and supervisor must sign a form indicating that the offer of limited-duty was accepted or declined.

The Postal Service also has a "light-duty" assignment, which is available to workers suffering from a serious injury or illness that temporarily renders the employee unable to perform his or her previous job, regardless of whether the injury occurred on the job.

A light-duty assignment must be requested in writing.  It does not guarantee the availability of work or particular hours, and assignment to these positions is determined in accordance with the collective bargaining agreements between the Postal Service and its employees.

Razote was first offered a limited-duty assignment in September 2005.  He accepted it and renewed such offers in January 2006, November 2006, August 2008, December 2009, and August 2010.  On each occasion, Razote was able to review the terms specified in the offer of limited duty and discuss his concerns with his supervisor, Susan Dalke ("Dalke").  In each instance, Razote signed the form and accepted the offer.  Although Razote acknowledges signing these forms, he contends that he is asked to perform tasks that go beyond those listed and exceed his physical capabilities.  Razote testified that he signed the forms even though they did not reflect all of his job duties because he loves his job and wants to keep it.  However, he testified that since December 2009, he has not been asked to perform any tasks not included on the forms.

On December 10, 2009, Razote contends he had a conversation with Dalke in which he told her that his limited-duty job was beyond his physical capabilities.  Razote contends that he asked Dalke if there were any light-duty jobs available at the Post Office.  He maintains that she responded by saying, "There are no light-duty jobs available at the post office at all.  We can send

you to rehab at Wal-mart or JC Penney." (Apparently, according to Razote's testimony, these companies have contracts with the Postal Service to provide employment to injured postal workers.)

Razote contends that he suffered a recurrence of his injury on February 12, 2010 and February 20, 2010, because his supervisors forced him to perform tasks that went beyond his limitations, including picking up heavy packages and pushing and pulling heavy equipment. Razote took a medical leave of absence and used sick time until July 31, 2010, when he was forced to return to work because he ran out of sick time. The Postal Service denies that Razote's injury was caused by his supervisors asking him to perform work that exceeded his limited-duty assignment.

## II. **LEGAL STANDARD**

Summary judgment is appropriate where the record shows that there is no genuine dispute as to an issue of material fact. FED. R. CIV. P. 56(a). A fact is material if it could affect the outcome of the suit under the governing law, and a dispute is genuine where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In ruling on summary judgment, the Court does not weigh the evidence or determine the truth of the matter, but determines whether a genuine issue of material fact exists that warrants trial. *Id*. at 249. In addressing a motion for summary judgment,

the court must review the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Vanasco v. National-Louis Univ.*, 137 F.3d 962, 965 (7th Cir. 1998). However, a genuine issue of fact is not shown by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party bears the burden of establishing the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party may not rest on mere allegations, but must present specific facts showing that a genuine issue exists for trial. *Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir. 1984). To support their positions that a genuine issue of material fact does or does not exist, the parties may cite to materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, and interrogatory answers, or show that the materials in the record do or do not establish a genuine dispute. Fed. R. Civ. P. 56(c).

## III. <u>ANALYSIS</u>

### A. Count I: Disability Discrimination

Razote brings a claim for disability discrimination under the Rehabilitation Act, 29 U.S.C. § 794(a). The Rehabilitation Act prohibits discrimination in the same manner as the Americans with Disabilities Act and uses the same standards, but applies to employees of federally funded programs. *Coleman v. Potter*, 09 C 3824, 2010 WL 4134337, at *6 (N.D. Ill. Oct. 19, 2010). The parties agree that Razote has no direct evidence of discrimination, so he is proceeding under the *McDonnell Douglas* burden-shifting method. This requires Razote to establish a *prima facie* case of discrimination, meaning a showing that: (1) he is disabled within the meaning of the Rehabilitation Act; (2) he is qualified to perform the essential functions of his job with or without accommodations; and (3) he suffered an adverse employment action because of his disability. *Dvorak v. Mostardi Platt Assoc., Inc.*, 289 F.3d 479, 483 (7th Cir. 2002). If the plaintiff can establish each of these elements, the burden shifts to the employer to offer a legitimate, non-discriminatory reason for the employment action. *Id.* at 485 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If the employer does so, the plaintiff must prove by a preponderance of the evidence that the employer's proffered reason was a pretext for discrimination. *Dvorak*, 289 F.3d at 485.

Initially, the Court notes that Razote's theory as to what constituted disability discrimination in this case is not entirely clear. In his Second Amended Complaint, Razote alleges that the Postal Service failed to provide him with a reasonable accommodation on December 10, 2009 (presumably referring to his conversation with Dalke in which he claims she told him no light-duty jobs were available), forced him to work outside his restrictions, and forced him to take a medical leave of absence in violation of the Rehabilitation Act following the recurrence of his injury. However, in his response brief, Razote claims he has been continually denied a light-duty job from the date of his injury to the present.

Regardless, the Postal Service challenges Razote's ability to establish that he was otherwise qualified to perform the job in question and that he suffered an adverse employment action. The Court will address each issue in turn.

### 1. *Qualified Individual*

As to Razote's qualifications, the Postal Service notes that by his own admission, Razote cannot perform the work of a letter carrier, with or without reasonable accommodation. *See* Pl.'s Resp. to Def.'s L.R. 56.1 Statement of Material Facts, ¶ 6. But while Razote acknowledges that he cannot do the regular work of a letter carrier because it involves too much walking and heavy lifting, he argues that he can perform the essential functions of the limited-

duty job assigned to him since 2005. He contends the limited-duty job is the relevant comparator for determining whether he is otherwise qualified.

The Seventh Circuit has not directly addressed this issue in light of the Postal Service's practice of assigning limited-duty jobs to employees injured on the job but has provided some guidance on the issue. For example, in *Basith v. Cook County*, 241 F.3d 919, 929-30 (7th Cir. 2001), the Court noted that merely because an employer may be able to restructure a job so that a disabled employee can fill the position does not mean that the essential functions of the position have changed. But in *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 697 (7th Cir. 1998), the Court noted that while the ADA does not compel an employer to convert temporary, light-duty assignments into permanent ones, if the light-duty positions offered to permanently disabled employees were in fact permanent jobs, assignment to them would be treated as a permanent reassignment for the purposes of an ADA accommodation.

District courts have divided on the issue of whether to consider limited-duty assignments given to injured postal workers to be official positions. For example, in *Luckiewicz v. Potter*, 670 F.Supp.2d 400, 408-09 (E.D. Pa. 2009), the court found that because the Rehabilitation Act did not require the Postal Service to create a new position for the plaintiff when he was injured, and because he was never assigned to a vacant, funded position that

would replace his letter carrier job, his letter carrier job was the appropriate benchmark for determining whether the plaintiff was otherwise qualified under the Act. *Id.; see Alenski v. Potter*, No. CV 03 2179, 2005 WL 1309043, at \*16 (E.D.N.Y. May 18, 2005) (holding that merely because plaintiff had held limited-duty assignment for three years did not mean the essential duties of the letter carrier position had changed).

Other courts, including those in this district, have ruled otherwise. *See McMillan v. Potter*, 06 C 2121, 2010 WL 1791268, at \*4 (N.D. Ill. May 5, 2010) (finding a question of fact as to whether limited-duty position was temporary for the purposes of deciding for which position plaintiff had to be "otherwise qualified"); *Winston v. Potter*, 01 C 2349, 2004 WL 3119834, at \*5 (N.D. Ill. Dec. 1, 2004) ("Once an employer places an injured employee on limited duty, the employee's qualifications must be measured in relation to the limited duty position occupied, not the position formerly held.").

Here, Razote first accepted a limited-duty assignment in September 2005, and renewed similar offers on five subsequent occasions. Apparently, Razote was occasionally sent from Niles to other branches of the Post Office to work under other supervisors. The Postal Service classifies limited-duty jobs as temporary and Razote likewise considered this a temporary job. Indeed, the crux of his Complaint is that he was not given a permanent job within

his physical restrictions. This weighs against finding that Razote was a qualified individual under the Rehabilitation Act. However, Razote was repeatedly assigned to work in a limited-duty capacity for several years. Although longevity alone is not enough to show the arrangement was permanent, it is significant that the Postal Service knew Razote was permanently disabled and continued to assign him to limited-duty work. *Williams v. Eastside Lumberyard and Supply Co.,* 190 F.Supp.2d 1104, 1117–18 (S.D. Ill. 2001). Ultimately, however, the Court need not resolve this issue because Razote cannot establish that he has suffered an adverse employment action.

### *2. Adverse Action*

An adverse action typically involves: (1) a decrease in pay or benefits, or a termination of employment; (2) a lateral transfer that affects the plaintiff's career prospects; and (3) cases in which the plaintiff is not transferred, but the conditions in which he works are changed in a way that is humiliating, degrading, unsafe, or unhealthful. *Nichols v. Southern Illinois University-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007).

Preliminarily, it is important to clarify the meaning of light-duty work as those terms are used by the parties. In the Postal Service regulations, light-duty work refers to a formal job assignment governed by the collective bargaining agreement between

the Postal Service and its unions. Light-duty work is provided, if available, to an employee temporarily unable to perform his or her regular duties and must be requested in writing. Razote has not brought forth any evidence that he ever bid for a light-duty assignment as required under the Postal Service regulations. Therefore, the failure of the Postal Service to assign Razote to such a position cannot be considered an adverse action. *See Nelson v. Potter*, 05 C 3670, 2007 WL 1052490, at *8 (N.D. Ill. April 2, 2007) (noting that duty to reasonably accommodate an employee under the Rehabilitation Act does not require an employer to violate a collective bargaining agreement or its own legitimate transfer policies).

However, Razote apparently did not want one of these temporary, light-duty jobs, but a permanent one. In his response brief, Razote contends, "the issue in this case is that Defendant impermissibly denied Plaintiff a permanent light-duty job in violation of Post Office regulations." Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J., at 8. Although not explicitly stated, this appears to be a reference to the Federal Employees Compensation Act ("FECA"), 5 U.S.C. § 8101, under which the Postal Service has the duty to provide accommodations to employees with job-related injuries. The OWCP administers FECA, and requested that the Postal Service accommodate Razote with a permanent position within his physical limitations. *See* 5 C.F.R.

§ 353.101(c) (providing that an employee who is physically disqualified from his position is entitled to be placed in another position for which he is qualified, while, to the extent possible, keeping the same status and pay.)

Razote's argument, at least in part, seems to be that the Postal Service failed to comply with FECA, and thus violated the Rehabilitation Act. However, Razote fails to provide any authority for this proposition. Further, the Court notes that the OWCP accepted Razote's limited-duty assignments, and such decisions are typically not reviewable in this Court because FECA is the exclusive remedy for workplace injuries suffered by federal employees. 5 U.S.C. § 8116(c); *see Meester v. Runyon*, 149 F.3d 855, 857 (8th Cir. 1998) (holding that FECA claimant was not entitled to judicial review of the Department of Labor's decision that a proposed position was an appropriate accommodation). More to the point, Razote is suing under the Rehabilitation Act, not FECA, and he has failed to develop a coherent theory as to how the Postal Service violated the provisions of the Rehabilitation Act, which do not require an employer to reassign an employee to a permanent light-duty position. *Gratzl v. Office of Chief Judges*, 601 F.3d 674, 680 (7th Cir. 2010).

Razote also contends that he suffered an adverse action because he was forced to work beyond his physical capabilities in his limited-duty assignment, resulting in a recurrence of his

injury on February 12 and February 20, 2010, which ultimately forced him to take a medical leave of absence when he used up his available sick time. The problem for Razote is that prior to the recurrence of his injury, he did not challenge the conditions of his limited-duty assignment through the procedures outlined by the OWCP. Razote admits that he had an opportunity to review the terms specified in each of the limited-duty offers and to discuss concerns with Dalke. In each instance, Razote signed the forms and accepted the assignment without noting any problems in the space provided on the forms. Although Razote argues that he was asked to perform duties that went beyond those listed, Razote testified that since December 2009, he has not been assigned any tasks that were not included on the forms. It is difficult for the Court to see how Razote can claim to have suffered an adverse employment action through a workplace injury when he was performing tasks that he agreed he was capable of performing. This is particularly true because, in arguing that he is otherwise qualified under the Rehabilitation Act, Razote contends he is able to perform the essential functions of his limited-duty job. Defendant's Motion for Summary Judgment on Count I is granted.

**B. Counts II and III: Gender and Race Discrimination**

Razote attempts to make a *prima facie* showing of race and gender discrimination under Title VII using the *McDonnell Douglas* burden-shifting test, which requires him to show: (1) he is a

- 14 -

member of a protected class; (2) his job performance met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) another similarly situated individual who was not in the protected class was treated more favorably. *Burks v. Wis. Dep't. of Transp.*, 464 F.3d 744, 750-51 (7th Cir. 2006).

In order for an employee to be similarly situated, the court must consider all relevant factors, which vary depending on the context of the case. *McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009). The Court should take a "flexible, common-sense approach" to determine whether there are sufficient common factors between the plaintiff and a co-worker to determine whether discrimination was involved in an employment decision. *Id.* at 579-80. To determine whether two employees are comparable, the court looks at factors including: (1) whether they held the same job description; (2) were subject the same standards; (3) were subordinate to the same supervisor; and (4) had comparable experience, education and other qualifications. *Ajayi v. Aramark Business Services, Inc.*, 336 F.3d 520, 532 (7th Cir. 2003).

Razote alleges that he can state a *prima facie* case for race and gender discrimination because non-Asian and female employees were given light-duty jobs following on-the-job injuries. The first problem with Razote's claim is that he has not shown that he

suffered an adverse employment action. Even if he could do so, his claim fails because he fails to provide enough information about his colleagues' disabilities, restrictions, or job requirements to show that they were similarly situated. *Matthews v. United States Steel Corp.*, No. 2:08-CV-37-PRC, 2010 WL 2076814, at *7 (N.D. Ind. May 24, 2010).

### *1. Racial Discrimination*

The first comparator Razote names in his racial discrimination claim is Sam Mercado ("Mercado"). It is undisputed that Mercado is a letter carrier who received a formal reassignment to the job of distribution clerk following a dog bite injury to his arm in 1988. Mercado received that reassignment through the union bidding process in place at the time. Razote asserts that he "believes Mr. Mercado was given a light-duty job because he was not Asian." He alleges discrimination because he was not reassigned following his injury like Mercado. However, Razote offers no evidence that he participated in a union bidding process to obtain a job reassignment. Additionally, Razote acknowledges that Mercado was not physically limited in the same manner as Razote because Mercado was able to bend, stand, and twist his torso. As such, Mercado is not an appropriate comparator.

Razote's other comparators for his racial discrimination claim are women he worked with in March 2007 after he was temporarily transferred to the Kedzie-Grace station. Razote alleges that Nela

Ward ("Ward"), an African-American woman, and Filana Kelly ("Kelly"), a Hispanic woman, were letter carriers who were injured on the job and who were given light-duty jobs. But Razote offers no evidence of how these women were injured or the nature of their limitations, and acknowledged that these women had physical capabilities that he did not, including bending and twisting. Additionally, these women were not supervised by Dalke, but by a manager named Karen Washington. For these reasons, Ward and Kelly also are not appropriate comparators. Defendant's Motion for Summary Judgment on Count II is granted.

### *2. Gender Discrimination*

In alleging gender discrimination, Razote points to Ward, Kelly, and three additional women, named only as Robyn, Melanie, and Leah. Razote met the latter three women in 2007 during a temporary assignment to the Ravenswood station. All of Razote's female comparators had different supervisors than he.

Notwithstanding that, he provides no information about their injuries or physical limitations. For example, Robyn operated a cage, which meant handing out and taking keys and calling carriers for the priority and express mail. Razote "believes" Robyn was injured on the job and obtained a light-duty assignment, but does not know how she was injured or what her restrictions are. Similarly, Razote contends that Melanie was a light-duty carrier "which meant she could not deliver mail and could only work in the

- 17 -

station." Pl.'s Mem. of Law in Opp'n to Def.'s Motion for Summ. J., at 13. But Razote offers no other information as to her job duties or limitations. As for Leah, Razote says he believes she was originally a mail sorter or clerk before being assigned a job answering phones at Ravenswood. So she did not hold the same position as he did, and she is an inappropriate comparator. More importantly, Razote cannot rely upon speculation about these women to survive summary judgment. *See Matthews*, 2010 WL 2076814, at \*7 ("While personal knowledge may form the basis of evidence offered in opposition to summary judgment and may include reasonable inferences supported by facts in the record, such inferences may not be based on flights of fancy, speculation, hunches, or intuitions."). Defendant's Motion for Summary Judgment on Count III is granted.

### C. Count IV: Retaliation

Razote brought his retaliation complaint under Title VII, which prohibits an employer from retaliating against an employee who has opposed an unlawful employment practice. *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002) (citing 42 U.S.C. § 2000e-3(a)). The Court notes that Razote did not bring a retaliation claim under the Rehabilitation Act, but the test for establishing retaliation is the same under both laws. *Porch v.*

*Potter*, No. 06 C 6322, 2008 WL 4216264, at *4 (N.D. Ill. Sept. 8, 2008).

Razote apparently wishes to proceed under the direct approach, which requires that the employee show that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse action by the employer; and (3) there was a causal link between the protected expression and the adverse action. *McClendon v. Ind. Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997). Here, Razote argues that he engaged in statutorily protected activity when he filed EEO complaints in May 2007 and January 2010. In retaliation, Razote alleges, Defendant failed to provide him with a light-duty job on December 10, 2009 (the date of his meeting with Dalke), assigned him tasks outside his restrictions, and forced him to take a medical leave of absence. Here, Razote can show that he made EEO complaints, but, as discussed above, he cannot show that he suffered an adverse employment action.

Further, Razote has not established a causal link between Dalke's alleged refusal of his request for a permanent light-duty job in December 2009 and a complaint filed more than two years earlier because too much time passed between those events to raise a causal inference. *See Childs v. Earle M. Jorgenson Co.*, No. 00 C 5853, 2001 WL 1607565, at *6 (N.D. Ill. Dec. 17, 2001) (noting that even a span of three months can be insufficient to establish causal link). Razote attempts to get around this by arguing that he was

denied a light-duty job every day since his injury in violation of Postal Service regulations. But this argument fails because, as explained above, Razote is not suing under the Postal Service regulations, but under the Rehabilitation Act. Other than timing, Razote raises no other evidence that discriminatory animus motivated the Postal Service's decision not to provide him a permanent light-duty job. Defendant's Motion for Summary Judgment on Count IV is granted.

## IV. CONCLUSION

For the reasons stated herein, Defendant's Motion for Summary Judgment is granted in its entirety.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　　United States District Court

**DATE:** 6/27/2011